IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KEYON PAYLOR,** | |
| *Plaintiff*, | |
| v. | Civil No.: 1:24-cv-02746-JRR |
| **BALTIMORE POLICE DEPARTMENT,** *et al.*, | |
| *Defendants.* | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants' Joint Motion to Bifurcate and Stay Discovery related to *Monell* Claim. (ECF No. 44; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, the Motion will be granted.

### I.   BACKGROUND

The court incorporates the extensive background set forth in its memorandum opinion at ECF No. 35. Briefly, Plaintiff initiated this civil rights action against Defendant Baltimore Police Department ("BPD"), Officer Defendants Daniel Hersl, John Burns, Timothy Romeo, and Jordan Moore (collectively, "Officer Defendants"), and unknown employees of BPD, asserting claims under 42 U.S.C. § 1983 and state law. (ECF No. 1.) He alleges that Officer Defendants fabricated evidence and then relied on same in drafting a Statement of Probable Cause, ultimately resulting in Plaintiff's arrest and charge for a crime he did not commit. *Id.* ¶¶ 23–24. Officer Defendants include Defendant Hersl who was a member BPD's Gun Trace Task Force ("GTTF"). *Id.* ¶ 34. Defendant Hersl was eventually indicted and later convicted for federal racketeering conspiracies. *Id.* ¶¶ 39, 41. Plaintiff alleges that the constitutional violations he suffered "were not isolated

events," rather "the result of the BPD's longstanding policies and practices of falsely arresting, prosecuting, and convicting individuals through profoundly flawed investigations." *Id.* ¶ 52.

Following motions practice, the following counts remain:

>   Count I: Violation of Due Process, 42 U.S.C. § 1983, against Officer Defendants;
>
>   Count II: Federal Malicious Prosecution and Unlawful Pretrial Detention, 42 U.S.C. § 1983, against Officer Defendants;
>
>   Count III: Failure to Intervene, 42 U.S.C. § 1983, against Officer Defendants;
>
>   Count V: *Monell* Policy Claims, 42 U.S.C. § 1983, against BPD based on Condonation and Failure to Supervise or Discipline Theories;
>
>   Count VI: Malicious Prosecution against Officer Defendants
>
>   Count VII: Intentional Infliction of Emotional Distress ("IIED") against Officer Defendants;
>
>   Count IX: Violation of Article 24 of the Maryland Declaration of Rights against Officer Defendants; and
>
>   Count X: Indemnification against BPD.[1]

(ECF No. 1 ¶¶ 74–130; ECF Nos. 35, 36.) Defendants now seek bifurcation of Count V (the *Monell* claim) against BPD and a stay of related discovery. (ECF No. 44.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). "Notably, Rule 42(b) is disjunctive, meaning '[o]nly one of these criteria need be met to justify bifurcation.'" *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 561 (D. Md. 2021) (quoting *Saxion v. Titan-C-*

---

[1] The court separately bifurcated and stayed discovery related to this claim. (ECF No. 35 at pp. 27–28.)

*Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996)).  The decision to bifurcate claims for trial is committed to the court's "broad discretion."  *Id.* (quoting *Beasley v. Kelly*, DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010)).

Federal Rule of Civil Procedure 26(d)(1) further provides:

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

FED. R. CIV. P. 26(d)(1).

### III.   ANALYSIS

Defendants argue that bifurcation here would serve multiple important purposes.  First, it serves judicial economy, because Plaintiff's *Monell* claim is derivative of the § 1983 claims against Officer Defendants and bifurcation would eliminate the possibility of potentially unnecessary litigation.  (ECF No. 44-1 at pp. 5–6.)   Second, Defendants urge that bifurcation "is essential to eliminate prejudice" and juror confusion based on the evidence that will be presented.  *Id.* at pp. 7–8.  Finally, Defendants contend that bifurcation and a stay of discovery as to the *Monell* claim is warranted because such discovery into BPD's policies, customs, and practices "will be an enormous and lengthy task." *Id.* at pp. 9–10.

For his part, Plaintiff opposes bifurcation and a stay, arguing that the alleged wrongdoing here is premised on "serious allegations, and ones that Plaintiff has a non-economic interest in pursuing," that any risk of prejudice is "speculative and premature," and that judicial economy will not be served by bifurcation and a stay because two trials are more onerous than one.  (ECF No. 53 at pp. 6–11.)

While "the decision of whether to bifurcate is a fact-specific inquiry," *see Cottman v. Baltimore Police Dep't*, No. 21-CV-00837-SAG, 2022 WL 2073852, at *2 (D. Md. June 9, 2022),

3

this court has repeatedly held that "[c]ases that contain *Monell* claims 'are good candidates for bifurcation.'" *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 460 (D. Md. 2020) (quoting *Beasley*, 2010 WL 3221848, at *3). "Judges in this district have repeatedly ruled that bifurcation 'is appropriate and often desirable' in cases involving both § 1983 claims against individual police officers and *Monell* claims." *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 561 (D. Md. 2021) (quoting *Brown v. Bailey*, No. CIV.A. RDB-11-01901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012)).

A plaintiff's § 1983 *Monell* claim generally "hinge[s] on his ability to show that [individual defendants] violated his constitutional rights." *Haughie v. Wexford Health Sources, Inc.*, No. CV ELH-18-3963, 2020 WL 1158568, at *16 (D. Md. Mar. 9, 2020) (quoting *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)); *see Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) (discussing bifurcated claims against officer and municipality); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that *Monell* does not authorize damages against municipal corporation based on actions of officer where jury concluded that officer "inflicted no constitutional harm" and was not instructed on affirmative defense of officer).

That notwithstanding, courts have recognized "narrow circumstances in which 'a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality.'" *Johnson*, 500 F. Supp. 3d at 463 (citing *Int'l Ground Transp. v. Mayor And City Council Of Ocean City, MD*, 475 F.3d 214, 219 (4th Cir. 2007) (explaining that "a situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality.")). "One such situation is when the individual defendants are entitled to qualified immunity." *Id.*; *see Int'l Ground Transp.*, 475 F.3d at 219 (reasoning that "because municipalities are not entitled to assert

a qualified immunity defense, a finding of a constitutional violation is conclusive as to their liability. Thus, a jury could find that a constitutional violation has occurred but that the individual defendants are entitled to qualified immunity."). As the Honorable Ellen L. Hollander of this court has aptly explained:

> The key question is whether the Officers committed constitutional violations, not whether they can be held liable for them. Plaintiffs will have a viable *Monell* claim against the County, despite the Officers being found not liable, if the fact-finder concludes that the Officers violated Mr. Evans' constitutional rights, and that those rights were not clearly established, such that the Officers are entitled to qualified immunity. On the other hand, if the fact-finder concludes that the Officers are not liable under § 1983 on the ground that they did not violate Mr. Evans' constitutional rights, then plaintiffs' *Monell* claim would founder[sic] as a matter of law. In either circumstance, the question of whether any police officer committed a constitutional violation is central to plaintiffs' claims against the County.

*Tserkis v. Baltimore Cnty.*, No. CV ELH-19-202, 2019 WL 4932596, at *8 (D. Md. Oct. 4, 2019). Thus, while BPD's liability may co-exist with Officer Defendants' non-liability, "the question of whether any police officer committed a constitutional violation is central to plaintiffs' claims against [BPD]." *Id.*

Moreover, the rationale for bifurcating *Monell* claims in § 1983 actions extends beyond the principle that such claims will often (although not always) hinge on individual defendant liability. Even absent the foregoing, bifurcation (and a related stay) also work to "spare the parties from expending valuable resources in discovery, because resolution of the claims as to the individual defendants may obviate the need to litigate the *Monell* claim." *Johnson*, 500 F. Supp. 3d at 460. Additionally, bifurcation operates to "prevent the potential prejudice to individual defendants that might result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs." *Id.*

On these topics, this court's previous analysis is helpful:

> First, bifurcation will protect against the risk of unfair prejudice to the Officer Defendants.
>
> . . .
>
> As discussed, "[e]vidence of the County's custom, practice or policy may include evidence of 'prior incidents of police brutality, the nature of such incidents, and the municipal policy-makers' reaction to them.'" [*Dawson v. Prince George's Cnty.*, 896 F. Supp. 537, 540 (D. Md. 1995)] (citations omitted). But, "[w]hile this evidence is most certainly relevant" to the plaintiff's case against a municipality, "the Court would not likely allow it" in the plaintiffs' suit against the Officer Defendants. *Id.*
>
> . . .
>
> Plaintiffs assert that, in the event this case proceeded to trial, a limiting instruction would easily cure any potential prejudice to the defendants caused by the introduction of *Monell* evidence against the County. But, the introduction of *Monell* evidence in a trial involving the Officers would inject an issue not necessarily relevant to the individual defendants; it is potentially inflammatory; and the reality is that it would be difficult for the jury to compartmentalize such evidence.
>
> . . .
>
> Given the far-reaching scope of *Monell* discovery, it makes good sense to establish first whether a constitutional violation occurred. This is because the absence of such a violation might well make discovery unnecessary with respect to the County.

*Tserkis*, 2019 WL 4932596 at *6–7 (record citation omitted).

Similarly, on judicial economy, the court further explained:

> Moreover, bifurcating the claims against the County and the Officer Defendants would promote judicial economy. *See* Fed. R. Civ. P. 42(b). Determining whether the Officer Defendants violated the Decedent's constitutional rights is a prerequisite to establishing liability against the County. *See Young*, 238 F.3d at 579; *Peprah*, 2019 WL 224245, at *10; *Burgess*, 2016 WL 1159200, at *1; *Williamson*, 2011 WL 1065780, at *2; *Marryshow*, 139 F.R.D. at 319. Failure to bifurcate the *Monell* claim would prolong the trial,

6

> because plaintiffs would necessarily have to present evidence pertinent to the *Monell* claim, while also producing evidence as to the Officers. Bifurcation "preserves scarce judicial and party resources by avoiding expenses related to [plaintiffs'] *Monell* claims until [they] ha[ve] established the existence of an underlying constitutional violation." *Peprah*, 2019 WL 224245, at *10.
>
> In other words, bifurcation will facilitate an expeditious trial as to the individual defendants by avoiding the delay inherent in the discovery process as to the *Monell* claim. It would also narrow the issues for trial. This would lead to a reduction of costs, without any real prejudice to plaintiff. *See Taylor*, 2010 WL 5247903, at *2 ("Streamlining the issues and limiting discovery . . . will curb rather than increase costs[.]").

*Id.*

The same rationale is compelling here. Even assuming this case may raise an issue of qualified immunity (which Plaintiff contends is not particularly likely given the facts here), the court agrees that bifurcation and a related stay of discovery as to Plaintiff's *Monell* claim will serve the interests of judicial economy and avoid a real risk of prejudice. Plaintiff has asserted a *Monell* claim against BPD, which Defendants contend, and the court is persuaded, requires "enormous and lengthy" discovery. (ECF No. 44-1 at pp. 9–10.) Indeed, such claims impose a rather exacting standard; further, Plaintiff's allegations cast a far and wide net, involving an indeterminate amount of officers, and are thus sure to involve substantial discovery.[2]

Plaintiff contends that judicial economy would not be served by bifurcation, because it will be "more onerous, and expensive, to litigate two jury trial than one."[3] (ECF No. 53 at p. 11, quoting *Tupea v. Kline*, 736 F. Supp. 3d 381, 385 (E.D. Va. 2024).) As this court has explained,

---

[2] For this same reason, Plaintiff's assertion that *Monell* discovery will not be so great because of the existence of investigations done from other sources is not compelling. (ECF No. 53 at pp. 14–15.)

[3] Plaintiff further argues that because BPD will not stipulate to a judgment seemingly as to Count X of indemnification upon a finding in favor of Plaintiff and against Officer Defendants, bifurcation of the *Monell* claim will further delay this case. Such speculation does not persuade the court that bifurcation is not warranted here; moreover, the court will take up the parties' arguments as to same should such events come to pass.

however, "[s]treamlining the issues and limiting discovery . . . initially will curb rather than increase costs, and if a second trial is necessary, any issues litigated in the first trial will be binding upon the parties during the second phase." *Taylor v. Maryland*, No. CIV.A. DKC 10-2167, 2010 WL 5247903, at *2 (D. Md. Dec. 16, 2010). The extensive discovery associated with a *Monell* claim would significantly prolong discovery here and therefore delay trial for all parties. Moreover, regarding Plaintiff's claims against the Officer Defendants, bifurcation and a stay will not deprive Plaintiff of "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that is "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

The court further finds that bifurcation will decrease the risk of prejudice should this case proceed to trial. As Defendants note, the risk of prejudice for Officer Defendants is high where Plaintiff's *Monell* claim will focus on previous incidents of alleged police misconduct and police misconduct on the part of non-defendant officers. *See Johnson*, 500 F. Supp. 3d at 460, *supra*. Plaintiff's allegations refer broadly to BPD's GTTF, with allegations spanning years, and to formal and informal customs, policies, and practices, as well as internal affairs policies. The court agrees that discovery into such matters will be substantial and, if presented before a jury, would pose a material risk of prejudice and jury confusion of the issues. Should this case reach trial, the court does not find Defendants' concern of prejudice to be speculative; indeed, such prejudice is a core rationale for bifurcation of *Monell* claims. Accordingly, the court is persuaded that bifurcation and a related stay are warranted here.

The court briefly addresses Plaintiff's additional challenges. First, Plaintiff argues as follows:

> To be clear, what the Defendants are actually asking for is not that
> Plaintiff litigate the claim against BPD at some later time if he

> proves liability against the Defendant Officers, but instead that the claim never see the light of the day. Lest there be any doubt on that score, in prior litigation against the BPD, Burgess v. BPD, No. 15 CV 834 (D. Md.), the City moved successfully to bifurcate the Monell claim against it. Doc. 68. Once the plaintiff secured a $15 million verdict against the defendant officer, the plaintiff moved to reopen discovery to litigate his Monell claim. Doc. 371. The City then argued it was moot, obviating any ability to expose the City's practice to the "disinfectant" of "sunlight." See Burgess v. Goldstein, 997 F.3d 541, 562 (4th Cir. 2021); Buckley v. Valeo, 424 U.S. 1, 67 (1976) ("Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.")

(ECF No. 53 at p. 6.) The parties' respective arguments about whether a paid judgment on a constitutional violation would moot a *Monell* claim are entirely premature and not dispositive on the issue of bifurcation. Consistent with precedent in this district, Defendants have requested bifurcation of the claims, not for the *Monell* claim to "never see the light of the day." *Id.* Whether Defendants may advance argument in the future based on resolution of Plaintiff's claims against Officer Defendants does not detract from the basis for bifurcation of such claims as set forth above. The court declines to take up such argument at the present stage.

Further, Plaintiff urges that because he raises serious allegations and public policy (interest) is served by litigation of his claims, bifurcation is not warranted. The court appreciates the seriousness of the allegations here. But Plaintiff neglects the fact that, but its very nature, a *Monell* claim always involves serious allegations of widespread official misconduct; and this court has previously bifurcated *Monell* claims in cases related to the GTTF for the reasons discussed above. *See, e.g., Burley v. Baltimore Police Dep't*, No. CV SAG-18-1743, 2019 WL 9078713, at *3 (D. Md. Nov. 18, 2019) ("As in the other GTTF cases I have decided recently, I am persuaded that the bifurcation of trials in this case will advance judicial economy.").

As Defendants assert in reply, allegations related to the GTTF are well-documented publicly—with the Steptoe and Johnson investigation report Plaintiff relies upon, the criminal

charges related thereto, the BPD consent decree, and, of course, the multiple other civil rights actions that have been filed against BPD and former GTTF members. The court appreciates Plaintiff's concerns, but the court concludes that bifurcation serves the interests of judicial economy, conservation of party (and public) resources, and avoidance of prejudice; it does not insulate BPD from potential liability on the *Monell* claim.

In sum, the court finds bifurcation "will promote judicial economy, conserve the parties' resources, prevent prejudice to [Defendants]," and will not significantly prejudice Plaintiff. *See Tserkis*, 2019 WL 4932596, at *8, *supra*.

### IV.  CONCLUSION AND ORDER

For the reasons set forth herein, it is this 30th day of October 2025,

**ORDERED** that Defendants' Motion (ECF No. 44) shall be, and is hereby, **GRANTED**; and further it is

**ORDERED** that Plaintiff's Count V is bifurcated from Plaintiff's Counts I, II, III, VI, VII, IX, and discovery with respect to Count V is stayed pending resolution/disposition of the balance of Plaintiff's Counts I, II, III, VI, VII, IX; this stay shall apply to proceedings in this court and shall not apply to appeal proceedings.

Within fourteen (14) days following final trial disposition of Plaintiff's remaining claims except Counts V and X, the remaining parties shall submit a joint status report regarding the remaining counts, to include stipulations, agreed-upon discovery and motions deadlines, following which the court will issue a scheduling order.[4]

/S/

_____
Julie R. Rubin
United States District Judge

---

[4] Should the parties not agree at that time as to progression of Counts V and X, the court will take up any dispute then.